UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAVIER SANTOS LUCAS JUAN,

Petitioner,

v.

CHRISTOPHER J. LaROSE, Senior Warden Otay Mesa Detention Center; TODD BLANCHE, Acting United States Attorney General; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; PATRICK DIVVER, ICE San Diego Field Office Director, in their official capacities,

Respondents.

Case No.: 3:26-cv-3568-JES-AHG

**ORDER:**

**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241;**

**(2) DENYING AS MOOT PETITIONER'S MOTION TO EXPEDITE; and PETITIONER'S MOTION FOR STATUS REPORT**

**[ECF Nos. 1, 9, 12]**

Before the Court is Petitioner Javier Santos Lucas Juan's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return, ECF No. 4 ("Ret."), Respondents' Supplemental Briefing, ECF No. 8 ("Supp."), and Petitioner filed a Traverse, ECF No. 5 ("Trav."), and a Motion for a Prompt Ruling, ECF No. 9. The Court has taken the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner is a forty-three-year-old citizen of Guatemala who has resided in the United States since 2019. Pet. ¶ 26. Petitioner is married with four children. *Id*. His wife and three youngest children reside in Guatemala, while his oldest son has lived in the United States with him. *Id*. Since his entry, Petitioner has been continuously employed and has no criminal history. *Id*.

Petitioner first entered the United States in May 2019 at the El Paso, Texas border with his then-eleven-year-old son. *Id*. ¶ 27. At that time, Petitioner had a prior expedited removal order, pursuant to 8 U.S.C. § 1225(b)(1). Supp. at 2–3; ECF No. 8-1 at 5. Due to lack of bed space and because Petitioner was the only family member able to care for his minor son, the U.S. Department of Homeland Security ("DHS") did not reinstate the prior removal order Supp. at 3. Instead, it granted Petitioner temporary parole, under 8 U.S.C. § 1182(d)(5), and placed him on an Order of Supervision ("OSUP"), pending the outcome of his son's removal proceedings. *Id*.

For the following seven years, Petitioner complied with his Immigration and Customs Enforcement ("ICE") check-in obligations, attending every scheduled appointment every three to four months—except for a period during the COVID-19 pandemic. Pet. ¶ 27. On March 12, 2024, Petitioner missed a scheduled OSUP meeting. ECF No. 8-1 at 4. Petitioner also failed to attend a non-detained family appointment on September 16, 2025. *Id*. Notably, the Government did not revoke Petitioner's parole or supervised release at that time or at any point before June 11, 2026.

On June 11, 2026, federal officers, conducting agency-approved record checks of license plates, identified Petitioner as a person lacking legal immigration status and arrested him in Poway, California. ECF No. 8-1 at 3. The Government initially intended to reinstate Petitioner's 2007 removal order, under 8 U.S.C. § 1231(a)(5), but instead initiated removal proceedings under 8 U.S.C. § 1229a. *Id*. at 9-10.

Petitioner has been detained at the Otay Mesa Detention Center since June 11, 2026. Pet. ¶¶ 26, 29. The Court's review of the record failed to make clear what legal status, if

any, Petitioner held following his release from custody in May 2019 and his current arrest. ECF No. at 7. As the nature of Petitioner's 2019 release bears directly on the appropriate remedy, the Court Ordered supplemental briefing from Respondents. *Id*. On June 25, 2026, Respondents provided Petitioner's immigration history and asserting that a bond hearing, not immediate release, is the appropriate remedy. ECF No. 8 at 3–4.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Government agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). When the Government fails to follow its own regulations in revoking a noncitizen's release or parole, that detention is unlawful, and the petitioner's release may be ordered. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 169–70 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017).

//

//

//

//

## III. DISCUSSION

### A. Jurisdiction

Based on the facts of this Petition, the Court finds that Section 1252's jurisdiction stripping provisions do not bar it from considering Petitioner's habeas Petition. *See Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025). Further, the prudential administrative exhaustion requirement for 28 U.S.C. § 2241 claims is excused. Thus, the Court finds that it has jurisdiction to hear the Petition.

### B. Respondents Failed to Properly Revoke Petitioner's Parole Prior to Re-Detention

Respondents' Supplemental Brief establishes that Petitioner was granted parole, under 8 U.S.C. § 1182(d)(5), in May 2019 and was placed on an OSUP pending the outcome of his son's removal proceedings. Supp. at 3; ECF No. 8-1 (Ex. 1). He was, therefore, paroled into the United States—not merely released on bond—and the conditions of that parole and the OSUP govern the terms of his presence in the United States. *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021).

Federal regulations impose procedural prerequisites before DHS may revoke a noncitizen's parole. *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025); *see* 8 C.F.R. § 212.5(e)(2). "Parole may be revoked" by the district director "in his or her discretion," but only upon a determination that the purposes of the parole have been served, that the parole violates the terms under which it was granted, or upon issuance of a charging document. 8 C.F.R. § 212.5(e)(2). The regulatory framework also requires that a noncitizen whose parole is being revoked, be given notice and an opportunity to be heard before or promptly after revocation. *See id*.

Here, the record contains no evidence that Petitioner's parole was ever formally revoked prior to his June 11, 2026, re-detention. Supp. at 3; ECF No. 8-1 at 2-5. Even when Petitioner missed a scheduled OSUP meeting in March 2024 and a non-detained family appointment in September 2025, DHS took no action to revoke his parole or supervision.

Supp. at 3; ECF No. 8-1 at 2-5. Thereafter, Petitioner continued to comply with the conditions of his OSUP for years after these incidents, without any formal parole revocation action. Supp. at 3; ECF No. 8-1 at 2-5.

Respondents offer no evidence that any parole revocation determination was made prior to Petitioner's June 11, 2026, arrest. Respondents' records reflect that agents conducted a license plate database check, identified Petitioner as lacking legal status, then arrested him. ECF No. 8-1 at 2-5. Any references to a prior formal determination that his parole had been revoked are conspicuously absent. *See id*. The Form I-200 Warrant for Arrest of Alien for Petitioner was issued on June 11, 2026, the same date as the arrest, and is grounded in a biometric database check rather than a prior parole revocation determination. *Id*. The Court also notes Respondents' initial intent to reinstate Petitioner's 2007 removal order, under 8 U.S.C. § 1231(a)(5). Supp. at 3. But this posture is inconsistent with the premise that Petitioner's parole had been validly revoked, such that the initiation of new immigration proceedings was appropriate. *See* 8 U.S.C. § 1182(d)(5)(A) (setting forth that parole does not constitute "admission" and is subject to regulatory revocation procedures).

Indeed, the Notice to Appear itself further exposes the inconsistency. *See* ECF No. 8-1 at 9. DHS charges that Petitioner "was not then admitted or paroled after inspection by an Immigration Officer." *Id.* Yet, DHS's own records confirm that he was paroled into the United States on May 7, 2019. *Id*. at 2-5. The Notice to Appear's assertion squarely contradicts the Government's own records. This suggests that DHS re-arrested Petitioner without accounting for his existing parole status—through which he acquired a liberty interest that requires due process prior to its revocation. *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025); *Mata Velasquez*, 794 F. Supp. 3d at 154; *Gergawi v. Larose*. No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *2-4 (S.D. Cal. Dec. 23, 2025).

In sum, the Court finds that Respondents lacked lawful authority to detain Petitioner because they failed to comply with the regulatory requirements governing parole

//

revocation before re-arresting him. *See* 8 C.F.R. § 212.5(e)(2); the Court, accordingly, will order his immediate release. *Mata Velasquez*, 794 F. Supp. 3d at 154.

**C. Respondents Failed to Comply with Regulatory Requirements Governing Revocation of Supervised Release**

Even setting aside the parole revocation issue, the record reflects that Respondents also failed to comply with the regulatory requirements governing revocation of an Order of Supervision before re-detaining Petitioner. *See* 8 C.F.R. §§ 241.4(l)(1)-(2). Revocation of supervised release is authorized when a noncitizen violates the condition of their OSUP or after DHS conducts a prior determination, based on changed circumstances, that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id*. § 241.4(l)(1); *Id*. § 241.4(l)(2); *Tran v. Noem*, No. 3:25-CV-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025).

As previously established, the record does not reflect that any such determination was made prior to Petitioner's arrest on June 11, 2026. *See generally* ECF No. 8-1 at 2-5. The Government provides no evidence that it has ever assessed whether Petitioner's removal had become significantly likely in the reasonably foreseeable future or documented any changed-circumstances determination that predated his arrest.

The Court is not aware of the conditions of Petitioner's supervised release as the Government did not provide a copy of the OSUP. Therefore, it cannot be ascertained whether Petitioner's missed check ins constitute a violation of the OSUP. But assuming Petitioner's conduct violated the terms of his release--and the Government was authorized to apprehend him—it still failed to perform its obligations under its own regulations. *See* 8 C.F.R. § 241.4(l)(1).

Upon revocation of supervised release, DHS must provide a noncitizen with a Notice of Revocation of Release. *Id*. Federal regulations also require that promptly after being re-detained, DHS must conduct an informal interview. *Id*. The record contains no such Notice nor any assertions or evidence that Petitioner received an informal interview at which he could contest his re-detention. *See Id*. Instead, he was arrested and re-detained—without

any of the procedural protections the regulations require. *See Saengphet v. Noem*, No. 25-cv-2909-JES-BLM, 2025 WL 3240808, at *3–7 (S.D. Cal. Nov. 20, 2025) (finding due process violated where Government failed to provide adequate revocation notice and meaningful opportunity to contest re-detention).

The Court, accordingly, finds that Respondents separately violated 8 C.F.R. § 241.4(l)(1) by failing to: (1) make a pre-detention changed-circumstances determination, (2) provide Petitioner with adequate notice of the reasons for revocation, and (3) afford Petitioner any meaningful opportunity to contest his re-detention. This independent ground provides an additional basis for granting Petition. *See Saengphet*, 2025 WL 3240808, at *7–8; *Rokhfirooz v. LaRose*, 804 F.Supp.3d 1095, 1098 (S.D. Cal. 2025).

**D. The Appropriate Remedy Is Immediate Release**

Respondents contend that a § 1226(a) bond hearing, rather than immediate release, is the appropriate remedy. Supp. at 3–4. The Court disagrees under these circumstances.

Where the Government lacks the lawful authority to detain a noncitizen in the first place—as is the case here—an order directing a bond hearing cannot adequately remedy the harm, because such a hearing "cannot serve as an adequate procedural safeguard" where "it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("[E]ven if Petitioner[] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

Immediate release is particularly warranted, here where the unlawfulness of the detention arises not from a disputed statutory interpretation, but from the Government's failure to follow its own regulations before re-arresting a person it had previously paroled and placed on supervised release. The Government arrested Petitioner without a prior parole revocation determination, without a notice of revocation, and without any opportunity for Petitioner to contest his re-detention—all required by regulation. Such

regulatory noncompliance warrants immediate release. *See J.A.C.P.*, 2025 WL 3013328, at *8; *Mayen v. Warden, California City Det. Ctr.*, No. 1:26-CV-02354-DAD-AC, 2026 WL 1158217, at *2 (E.D. Cal. Apr. 29, 2026) (ordering immediate release where no evidence government issued proper warrant upon detention); *Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("[R]elease is an available and appropriate remedy for detention that lacks a lawful predicate.").

The Court also notes that DHS retains authority to re-detain Petitioner in the future, but only in compliance with the applicable regulatory requirements. Any future re-detention, however, must follow the procedural requirements of 8 C.F.R. § 212.5(e)(2) and/or 8 C.F.R. § 241.4.

## IV. CONCLUSION

The Government failed to follow its own regulations when it re-detained Petitioner without: (1) formally revoking Petitioner's parole under 8 C.F.R. § 212.5(e)(2) prior to his arrest; (2) making a pre-arrest determination based on an opinion that Petitioner violated any condition of release;, as required by 8 C.F.R. § 241.4(l)(2); (3) providing Petitioner with notice of revocation of his supervised release; and (4) affording Petitioner an opportunity to contest his re-detention prior to arrest. Respondents' regulatory noncompliance deprived Petitioner of his liberty without due process of law, in violation of the Fifth Amendment. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** and Petitioner is **ORDERED RELEASED**.

Based on the foregoing:

(1) The Court **GRANTS** the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241;

(2) Respondents are **ORDERED** to immediately **RELEASE** Petitioner from custody, under the same conditions as previously imposed;

(3) Petitioner recently filed two motions: a Motion to Expedite; and

a Motion for a Status Report. ECF Nos. 9, 12. As the Petition has been granted on the merits, the Court **DENIES AS MOOT** both motions; and

(4) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 18, 2026

Honorable James E. Simmons Jr.
United States District Judge